# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALEED EDENS,** | : | **CIVIL NO. 1:18-CV-678** |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **MAJOR LORI ANN WHITE,** *et al.*, | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Waleed Edens ("Edens"), an inmate who was housed at all relevant times at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 29). Named as defendants are major Lori White, lieutenant Steven Gavlick, sergeant Robert McCoy, sergeant Kenneth Berlew, deputy Joseph Zakarauskas, and correctional officers Stephen Robertson, Bradley Scott, and James Gillen. Before the court is defendants' motion (Doc. 43) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion will be granted in part and denied in part.

## I. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

## II. Statement of Material Facts[1]

On December 16, 2015, defendant Berlew and other officers escorted Edens to the Restricted Housing Unit ("RHU") at SCI-Dallas. (Doc. 29 ¶ 13; Doc. 45, Statement of Material Facts, ¶ 1). During the escort, Edens informed defendant Berlew that his legal materials were on the C-block officer's desk. (Doc. 29 ¶ 13). On December 23, 2015, Edens spoke to defendant White about his missing legal materials. (Doc. 45 ¶ 2).

On December 30, 2015, Edens filed grievance number 605146 regarding his lost legal materials and requested that the video surveillance of his escort to the RHU be preserved. (Id. at ¶ 3; Doc. 44-1, at 4). On January 11, 2016, defendant White denied the grievance on initial review. (Doc. 45 ¶ 4; Doc. 44-1, at 5). On January 12, 2016, Edens filed an appeal to the facility manager. (Doc. 45 ¶ 5; Doc.

---

[1] Edens filed a statement of material facts (Doc. 47), however his statement of material facts fails to comply with Local Rule 56.1 which requires a party opposing a motion for summary judgment to "include a separate, short and concise [responsive] statement of the material facts, responding to the numbered paragraphs set forth in" the movant's fact statement. See Local Rule 56.1. Edens' responsive fact statement (Doc. 47) contains four paragraphs, and fails to correspond to the thirty-two paragraph concise statement of material facts filed by defendants (Doc. 45). The averments of Edens' responsive fact statements are entirely independent of those in defendants' filing, and the numbered paragraphs of Edens' submission do not correlate in any meaningful way to the paragraphs in defendants' statement. In sum, Edens' document does not comply with Local Rule 56.1's requirement of parity between the two filings and Edens does not respond to the majority of defendants' fact statements. Therefore, as authorized by Local Rule 56. 1, the court will admit as uncontroverted the statement of facts submitted by defendants that Edens has not contested. See Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."). To the extent that Edens disputes defendants' fact statements, the court cites to Edens' statement of facts.

44-1, at 6-7). The facility manger denied the appeal. (See Doc. 44-1, at 8). On January 29, 2016, Edens filed an appeal to final review. (Doc. 45 ¶ 5; Doc. 44-1, at 9). On March 4, 2016, the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") upheld the denial of the grievance. (Doc. 45 ¶ 6; Doc. 44-1, at 8). The chief grievance officer of the SOIGA found that Edens assaulted staff causing an emergency situation and it was not staff's responsibility to keep track of Edens' folder during the situation. (Id.)

On February 25, 2016, defendants Gavlick, McCoy, Robertson, Scott, Gillen, and other officers reported to a call at Edens' cell. (Doc. 45 ¶ 7). Defendant Zakarauskas was in the RHU control room and observed Edens on closed circuit television attempting to injure himself. (Id. at ¶ 8). Edens initially refused orders to come to the door to be handcuffed, but ultimately complied. (Id. at ¶ 9). Defendants assert that officers were able to escort Edens to the RHU dayroom, but Edens broke free from defendant McCoy's grasp and attempted to head-butt defendant Robertson. (Id. at ¶ 10). Defendants McCoy, Robertson, Scott, and other officers took Edens to the ground in an effort to regain control over him. (Id. at ¶ 11). Defendants contend that Edens then began to kick at the officers, eventually kicking defendant Scott. (Id. at ¶ 12).

Edens asserts that he did not resist McCoy's order to be handcuffed, and did not resist or disobey McCoy, Gavlick, Scott, Robertson, and Gillen when they were escorting him down the tier. (Doc. 47 ¶¶ 1-2). Edens further avers that defendants used unreasonable force during this incident, resulting in injury. (Id. at ¶¶ 3-4).

4

During the incident, defendant Zakarauskas left the dayroom area in order to inform other staff that the Program Review Committee ("PRC") hearings would be delayed due to the incident in Edens' cell. (Doc. 45 ¶ 13). Defendant Zakarauskas maintains that he did not return to the dayroom until after Edens was restrained on the floor. (Id. at ¶ 14). Edens asserts that defendant Zakarauskas witnessed the use of force incident and failed to intervene. (Doc. 46 ¶ 5).

There is no closed-circuit video of the incident in the dayroom and the handheld video did not begin to record until Edens was already restrained on the ground. (Doc. 45 ¶ 15). Other staff witnesses in the dayroom reported that Edens was combative and spit on officers during the incident. (Id. at ¶ 16).

Edens was escorted to medical and received treatment for a split lip. (Id. at ¶ 17). There are no reports of any bruises to the face or head that would be consistent with Edens being kicked in the face. (Id. at ¶ 18).

Due to the nature of the incident, Edens was issued a misconduct and was placed on cell restrictions. (Id. at ¶ 20).

SCI-Dallas subsequently turned over the investigation of Edens' use of force complaints to the Department of Corrections' ("DOC") Office of Special Investigations and Intelligence ("OSII"). (Doc. 44-4). The OSII was ultimately unable to substantiate Edens' claims of excessive force and the investigator made the following findings. Edens stated that on February 25, 2016, he was attempting suicide in his cell when defendant Gavlick arrived at his cell and ordered him to be handcuffed. (Id. at 9, 46-47). Edens initially resisted, but eventually complied with

5

the order to be handcuffed. (Id. at 4). However, once the wicket was opened, Edens began to resist and pull away. (Id.) Due to Edens' combative behavior, defendant McCoy wanted to take him off the range as soon as possible. (Id.) Defendant McCoy proceeded to take Edens out of his cell and escorted him to the dayroom. (Id.) Edens contends that McCoy banged his head off the door in the dayroom, threw him onto the floor, kicked him in the mouth and ribs, and spit in his face. (Id. at 9-10). Edens was then taken to the ground by defendants McCoy, Robertson, and Scott in an effort to regain control over him. (Id. at 4). At this point, Edens began to kick at the officers, eventually kicking defendant Scott. (Id.) During the investigation, several staff members were interviewed and stated that Edens was resisting the officers and was combative once he entered the dayroom. (Id.) After the incident, Edens was transported to the infirmary for medical treatment. (Id.) The medical report indicates that Edens had a laceration and puncture wound on his lower lip. (Id. at 5, 44-46). Medical personnel cleaned Edens' lip and used stitches to close the wound. (Id.) The report does not document any other injuries to Edens' face or head, and color photographs of Edens do not show any other bruises to his face or head. (Id. at 5, 49-50). All of the staff members interviewed during the investigation were unable to explain how Edens split his lip during the incident. (Id. at 5). The investigator found that the investigation did not prove the allegations brought forth by Edens and the allegations were deemed unsubstantiated. (Id.; Doc. 45 ¶ 19).

On March 1, 2016, Edens filed grievance number 615781 alleging that he was assaulted. (Doc. 45 ¶ 21; Doc. 44-2, at 2). In lieu of an initial response, the investigation into the alleged abuse was opened pursuant to DC-ADM 001. (Doc. 45 ¶ 22; Doc. 44-2, at 3). On September 9, 2016, the grievance was denied based on the OSII's findings that the allegations of abuse were deemed unsubstantiated. (Doc. 45 ¶ 23; Doc. 44-2, at 4). Edens appealed this decision to the facility manager. (Doc. 45 ¶ 24; Doc. 44-2, at 6, 10). On October 28, 2016, the facility manager upheld the initial response. (Doc. 45 ¶ 25; Doc. 44-2, at 7, 11). Edens then filed an appeal to the SOIGA. (Doc. 45 ¶ 26; Doc. 44-2, at 12). On September 5, 2017, the SOIGA upheld the response of the facility manager. (Doc. 45 ¶ 27; Doc. 44-2, at 13). The SOIGA noted that the record reflected that Edens' allegations of abuse were unsubstantiated, and the investigation was found to be satisfactory. (Id.)

The DOC authorizes use of force against an inmate when a staff member reasonably believes such force is necessary to protect oneself or others and/or to effect compliance with the rules and regulations when other methods of control are ineffective or insufficient. (Doc. 45 ¶ 28; Doc. 44-3, DC-ADM 201, Use of Force, at 2-3, § III (A)). When force is used, the least amount of force the staff member reasonably believes is necessary to achieve the authorized purpose is to be used and the use of force must stop once control is achieved. (Doc. 45 ¶ 29; Doc. 44-3, at 3, § III (B)). Use of force is applied in accordance with a force continuum. (Doc. 45 ¶ 30; Doc. 44-3, at 3, § III (C)). Any planned or unplanned use of force incident is reported, documented, and reviewed. (Doc. 45 ¶ 31; Doc. 44-2, at 4, § III (G)).

On March 13, 2018, Edens initiated this action by filing his original complaint. (Doc. 45 ¶ 32; Doc. 1).

### III. Discussion

#### A. First Amendment Access to the Courts Claim

##### 1. *Statute of Limitations*

Defendants contend that Edens' First Amendment claim is barred by the statute of limitations. (Doc. 44, at 13-15). In § 1983 actions, federal courts apply the state's statute of limitations for personal injury. See Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (in section 1983 actions the court looks to the law of the state for the length of the statute of limitations for personal-injury actions). In Pennsylvania, the relevant statute of limitations is two (2) years. Wooden v. Eisner, 143 F. App'x 493, 494 (3d Cir. 2005); see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855 F.2d 1080, 1087 (3d Cir. 1988) ("[T]he correct statute of limitations for . . . [§] 1983 actions is the state statute of limitations for personal injury tort actions."); 42 PA. STAT. AND CONS. STAT. ANN. § 5524.

However, the date when a cause of action accrues is still a question of federal law. Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995). Under federal law, a civil rights cause of action accrues—and the statute of limitations begins to run—when the plaintiff "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). In other words, the limitations period begins to run when a

plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Importantly, the "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id. The statute of limitations is tolled while an inmate plaintiff exhausts his administrative remedies. See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

On December 16, 2015, Edens was escorted to the RHU and left a folder of legal materials on the C-block officer's desk. (Doc. 29 ¶¶ 12-13). On December 23, 2015, Edens spoke with defendant White about his missing legal materials. (Id. at ¶ 14). On December 30, 2015, Edens filed a grievance regarding the lost legal materials. (Id. at ¶ 15; Doc. 44-1, at 2, 4). Edens appealed the denial of this grievance to all levels of review. On March 4, 2016, the SOIGA ultimately upheld the denial of the grievance. (Doc. 44-1, at 8).

In response to the motion for summary judgment, Edens does not dispute defendants' argument that his access to the courts claim is barred by the statute of limitations. (See Docs. 46, 47). It is undisputed that Edens knew or should have known of the loss of his legal materials on December 23, 2015, when he spoke to defendant White. Therefore, the statute of limitations began running on that date. Absent any tolling, the limitations period would have expired on or about December 26, 2017. However, the period was tolled from December 30, 2015 through March 4, 2016, the time that Edens pursued administrative relief through the grievance

9

process. When the limitations period began running again, there were approximately 723 days of the two-year filing period remaining, resulting in a required filing date of February 26, 2018. Edens did not file his original complaint until March 13, 2018.[2] Because Edens failed to file his First Amendment claim within the limitations period, defendants White and Berlew are entitled to summary judgment on this claim.

### 2. *Merits*

Even had Edens timely filed his First Amendment claim, defendants White and Berlew would be entitled to summary judgment on the denial of access to the courts claim. Edens asserts that defendants White and Berlew denied him access to the courts by allowing his legal materials to be misplaced and destroyed. (Doc. 29 ¶¶ 16-17).

A First Amendment denial of access to the courts cause of action is stated by alleging that a particular defendant: (1) interfered with; (2) a nonfrivolous attack on conditions of confinement, or the defense against a criminal charge, a direct appeal from or collateral attack on a criminal conviction, or a habeas corpus petition. See Lewis v. Casey, 518 U.S. 343, 353 n. 3, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, as the

---

[2] Under the standards announced in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), Edens' action is deemed filed as of March 13, 2018, the date he signed his original complaint.

Supreme Court made clear in Lewis, a plaintiff must demonstrate actual injury. In other words, the inmate must allege some legal loss.

Edens states that his missing legal folder consisted of discovery material, trial transcripts, affidavits, and phone records related to his criminal case. (Doc. 29 ¶ 12). Edens has not asserted that he actually missed any deadlines or was precluded from making some arguably meritorious claim. He has thus failed to present any evidence that he suffered an actual injury. In failing to establish actual injury or some legal loss, Edens fails demonstrate that defendants' conduct imposed a substantial impact on him. See Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy.'") (citation omitted). Consequently, defendants White and Berlew are entitled to summary judgment on the access to courts claim.

**B.     Eighth Amendment Excessive Use of Force Claim**

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); see also U.S. CONST. amend. VIII. To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable

state of mind" of the defendant official.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

An Eighth Amendment challenge asserting excessive force is subject to a malicious and sadistic standard.  See Zimmerman v. Schaeffer, 654 F.Supp.2d 226, 247 (M.D. Pa. 2009) (citing Hudson, 503 U.S. at 6-7, 112 S.Ct. 995).  The inquiry under this standard is whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 6, 112 S.Ct. 995 (citations and quotations omitted); see also Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  In an excessive force case, a prisoner need not show significant injury; however, *de minimis* uses of physical force are insufficient to establish an Eighth Amendment violation.  Hudson, 503 U.S. at 9-10, 112 S.Ct. 995.  Excessive force claims are typically based in emergency situations where prison officials must use force and act quickly and decisively to maintain or restore discipline.  See Hudson, 503 U.S. at 6-7, 112 S.Ct. 995.

Where events at issue have been captured on videotape, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.  See Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The court must view the facts in the light depicted by the videotape.  See id. (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

In this instance, the allegations of how much force defendants used, and the need for it, are disputed. Defendants Gavlick, McCoy, Robertson, Scott, and Gillen maintain that they employed only the minimal force necessary to gain control over Edens, who was combative with the officers. (Doc. 44, at 19-20). Defendants further aver that Edens only suffered a laceration to his lower lip, and there were no other reports of bruises to his face or head. (Id. at 19). However, Edens claims that a genuine issue of material fact exists as to whether defendants used unreasonable force in violation of his Eighth Amendment rights. Of note, Edens points out that disputes exist on the following issues related to the use of force incident: that more than a *de minimis* amount of force was used against him; the prison officials' conduct was malicious and sadistic; that he was not resisting, threatening, or disobeying anyone; and, there is a genuine issue as to whether defendant McCoy kicked him and spit on him. (Docs. 46, 47). The court finds that, taking the facts in the light most favorable to Edens, a reasonable jury could determine that defendants used unreasonable force while restraining him on February 25, 2016.

Defendants point to an internal investigation conducted by the OSII which concluded that Edens' claims of excessive force were unfounded. (Doc. 44-4). As part of the investigation, a lieutenant interviewed Edens, witnesses, and the staff involved in the February 25, 2016 unplanned use of force incident, and reviewed the housing unit video footage and handheld video footage of the incident. (Id. at 2-5). Every staff member interviewed during the investigation was unable to explain how Edens injured his lip during the incident. (Id. at 2-5, 11, 14, 16, 19, 22, 24, 26, 28, 32,

13

34, 37, 39-40). Upon review of the security footage, the court finds that the video does not conclusively show that defendants did not use excessive force.

The closed-circuit video footage of Edens' housing unit first shows staff members at another inmate's cell. (See Doc. 52). The staff members then shift their focus to Edens' cell and remove him from the cell. (Id.) The next views are from the handheld video camera. The handheld camera footage of the incident begins to record *after* Edens was handcuffed on the ground in the dayroom. (Id.) The video shows Edens restrained on the ground, in handcuffs and shackles, with a bloodied spit hood on his head. (Id.) There is no video footage of Edens' initial escort from his cell to the dayroom and subsequent confrontation with the officers. The video proceeds to document Edens' escort to medical, medical assessment and treatment, and placement in the RHU cell. (Id.)

The manner in which Edens' injuries were inflicted, and whether the force used during the incident was necessary, are clearly in contest. Edens maintains that defendants Gavlick, McCoy, Robertson, Scott, and Gillen assaulted him and used excessive force on him, and the video does not categorically rule out that possibility. These issues are more appropriately resolved by the finder of fact and cannot be resolved at the current time. Where videotape evidence is susceptible to multiple reasonable interpretations or cannot clearly resolve the facts in dispute, as is the case here, summary judgment is inappropriate. Patterson v. City of Wildwood, 354 F. App'x 695, 698 (3d Cir. 2009)). Accordingly, defendants' motion for summary judgment on the excessive force claim will be denied. Because Edens'

14

excessive force claims against defendants Gavlick, McCoy, Robertson, Scott, and Gillen shall proceed, the court will exercise supplemental jurisdiction over the related state law assault and battery claims.³  (See Doc. 29 ¶ 25).

### C. Eighth Amendment Failure to Intervene Claim

Edens asserts that defendant Zakarauskas failed to intervene in the use of force incident on February 25, 2016.  (Doc. 29 ¶¶ 21, 30).  In order to prevail on a failure to intervene claim, the plaintiff must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'"  Knight v. Walton, No. 2:12-CV-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002)) (citation omitted).  The Third Circuit Court of Appeals has held that a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had "a realistic and reasonable opportunity to intervene" and "simply refused to do so."  Smith, 293 F.3d at 650-51.

With respect to the failure to intervene claim against defendant Zakarauskas, the OSII investigation revealed that defendant Zakarauskas was in the dayroom of the RHU on February 25, 2016 to prepare for PRC hearings.  (Doc. 44-4, at 11).  Zakarauskas asserts that he was observing the cell cameras inside the K Block

---

³ Defendants have not moved for summary judgment on the state law claims.

Control Room through the window from the dayroom and observed that Edens was possibly attempting to harm himself. (Id.) Zakarauskas ordered defendant McCoy

and other staff members to report to Edens' cell before he could injure himself. (Id.)  Zakarauskas then went to the lieutenant's area and placed a phone call.  (Id.)  Zakarauskas left the lieutenant's area and observed Edens restrained on the dayroom floor in the prone position.  (Id.)  Zakarauskas maintains that he did not witness any staff assault Edens or use excessive force on Edens, and he does not know how Edens injured his lip during this incident.  (Id.)  Edens counters that defendant Zakarauskas "watched" as he was assaulted by defendants Gavlick, McCoy, Robertson, Scott, and Gillen, and failed to stop the assault.  (Doc. 29 ¶¶ 21, 30; Doc. 46 ¶ 5).  The court finds that there is a genuine dispute as to whether defendant Zakarauskas failed to intervene in the use of force incident on February 25, 2016.  Accordingly, the court will deny summary judgment on this claim.

## IV. Conclusion

Defendants' motion (Doc. 43) for summary judgment will be granted in part and denied in part.  An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    March 31, 2020